IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTRAL LABORERS' PENSION FUND, CENTRAL )
LABORERS' SUPPLEMENTAL PENSION FUND, )
CENTRAL LABORERS' WELFARE FUND, CENTRAL )
LABORERS' RETIREE WELFARE FUND, CENTRAL )
LABORERS' ANNUITY FUND, CENTRAL )
LABORERS' ANNUITY PREMIUM FUND, ILLINOIS )
LABORERS' AND CONTRACTORS' JOINT )
APPRENTICESHIP & TRAINING PROGRAM, )
NORTH CENTRAL ILLINOIS LABORERS' )
HEALTH & WELFARE FUND, CENTRAL ILLINOIS )
LABORERS'-EMPLOYERS' COOPERATIVE )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS )
LABORERS'-EMPLOYERS' COOPERATIVE )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS )
MIDWEST REGIONAL ORGANIZING COMMITTEE, )
NORTH CENTRAL ILLINOIS MARKET )
PRESERVATION FUND, LABORERS' OF ILLINOIS )
VACATION FUND, SOUTHERN AND CENTRAL )
VACATION FUND, CENTRAL ILLINOIS LEGAL )
SERVICES FUND, SUBSTANCE ABUSE TESTING )
FUND, LABORERS' LOCAL 362, and LABORERS' )
LOCAL 538, )
                   )
  Plaintiffs,            )
                   )
  v.                 ) No. 14-3052
                   )
AEH CONSTRUCTION, INC., and MID-WEST )
ILLINOIS CONCRETE CONSTRUCTION, INC., )
                   )
  Defendants.           )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Enforce Settlement (d/e 23) filed by Plaintiffs. Because the Court finds that the parties did not have a meeting of the minds regarding a material term of the agreement, the Motion is DENIED.

### I. JURISDICTION, APPLICABLE LAW, AND LEGAL STANDARD

This Court has jurisdiction over the Motion to Enforce Settlement because the case is still pending before this Court. See Wilson v. Wilson, 46 F.3d 660, 664 (7th Cir. 1995) (holding that a district court has the inherent power to enforce an agreement to settle a case that is pending before the district court). The jurisdictional problems arise when the parties settle, dismiss the case, and then one party tries to return to federal court to enforce the settlement. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction"). That is not the case here.

The Court applies Illinois law to the Motion to Enforce Settlement. The Seventh Circuit has expressly held that "the

formation, construction, and enforceability of a settlement agreement is governed by local contract law." Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996); see also Lynch, Inc. v. SamataMason, Inc., 279 F.3d 487, 490 (7th Cir. 2002) (noting that while there has been some uncertainty in the past, it is now clear that state law governs a suit to enforce a settlement of a federal suit). Finally, whether to enforce a settlement agreement is within the district court's discretion. Hakim v. Payco-General Am. Credits, Inc., 272 F.3d 932, 935 (7th Cir. 2001) (noting that the Seventh Circuit reviews a district court's decision to enforce a settlement agreement for an abuse of discretion).

## II. BACKGROUND

In February 2014, Plaintiffs filed a lawsuit against AEH Construction, Inc. (AEH) and Mid-West Illinois Concrete Construction, Inc. under ERISA for the failure to pay certain contributions on behalf of employees who are members of the union and participants in Plaintiffs' employee benefit funds. See Complaint (d/e 1). In Count I, Plaintiffs allege that AEH owed audit liabilities, delinquent contributions, report form shortages,

liquidated damages and audit costs. Count II alleges that Mid-West is liable as the successor company to AEH.

In June 2014, the Court entered an Order of Default Judgment against AEH. See d/e 22. Since then, the case has proceeded solely against Mid-West (hereinafter referred to as Defendant). Plaintiffs are represented by Timothy James Shrake, II and Patrick J. O'Hara (the latter since March 17, 2015). Defendant is represented by Brian A. Peterson.

Plaintiffs have now filed a Motion to Enforce Settlement. See d/e 23. In the motion and memorandum, Plaintiffs assert that the parties reached an oral agreement but Defendant has failed to sign the written Settlement Agreement. Defendant essentially asserts in its memorandum in opposition that the oral agreement was contingent upon the parties reaching a mutually agreeable confidentiality provision. Both parties submitted affidavits and documents to support their respective positions.

On March 17, 2015, Plaintiffs filed a Motion requesting a status hearing. Plaintiffs asserted that, because it was clear that two different versions of the facts were presented, neither counsel could act as counsel in this case because they were now material

witnesses in the case. Plaintiffs asked for a status/discovery conference to advance the disposition of the pending issues.

On March 27, 2015, this Court held a status hearing and heard the positions of the parties on both the Motion to Enforce Settlement and disqualification of counsel. This Court concluded that discovery was not required, the Court could decide the Motion on the pleadings submitted, and that disqualification was unnecessary.

### III. FACTS PERTAINING TO THE SETTLEMENT NEGOTIATIONS

The Affidavits and documents submitted show there are slight differences between the parties about what occurred in this case. The parties agree that settlement negotiations began in March 2014 and spanned approximately six months, the delay being due in part to the fact that Plaintiffs' Board of Trustees only meets quarterly.

The parties also appear to agree that on September 11, 2014, Defendant offered to settle for a lump sum payment of $22,000 "with the payment being contingent upon no admission of liability and a mutual full and final release through November 2012 with a confidentiality provision." Shrake Aff. ¶1. Plaintiffs' counsel told

Defendant's counsel that the Board of Trustees would have to formally accept the offer.  Id. ¶ 2.  On September 29, 2014, the Board of Trustees accepted the offer, and the next day, September 30, Plaintiffs' counsel conveyed the acceptance to Defendant's counsel.  Id. ¶¶ 3, 4; see also Exhibit 1A, September 30, 2014 email from Shrake to Peterson noting the committee approved the settlement payment "which would include a final release through November 2012 and a confidentiality provision") (d/e 24-2). Defendant asserts that subsequent to receiving the September 30, 2014 correspondence from Plaintiffs' counsel, Defendant's counsel had a conversations with Plaintiffs' counsel in which defense counsel explained that a confidentiality provision was necessary to prevent disclosure to other pension funds who may have a claim against AEH and may want to file a similar lawsuit alleging successor liability against Defendant Mid-West if the settlement were disclosed.   Peterson Aff. ¶ 2.

On October 15, 2014, Plaintiffs' counsel sent Defendant's counsel a draft version of the settlement agreement memorializing the previously agreed upon terms and requesting Defendant's

counsel redline any proposed changes. Shrake Aff. ¶ 5.[1] On November 18, 2014, Defendant's counsel sent a redline draft of the settlement document with Defendant's proposed changes. Shrake Aff. ¶ 6. [2] Defendant's counsel asserts that after he sent the redlined draft settlement to Plaintiffs' counsel, Defendant's counsel had a telephone conversation with Plaintiffs' counsel in which Defendant's counsel notified Plaintiffs' counsel that Defendant could not agree to a confidentiality provision which permitted disclosure to affiliated organizations because Defendant did not have sufficient funds to settle and defend another action for successor liability. Peterson Aff. ¶ 3. Defense counsel also told Plaintiffs' counsel that, if the Agreement did not strike the phrase "affiliated organizations," Defendant could not agree to the settlement. Peterson Aff. ¶ 3. Plaintiffs' counsel told Defendant's

---

[1] The language that was ultimately in dispute was a portion of the confidentiality provision. The initial proposed language is as follows: "It is further hereby acknowledged by the parties that this Settlement Agreement and all the terms thereof, including, but not limited to the amount of the settlement, shall remain confidential and shall not be disclosed to entities or individuals outside of the parties to the Central District litigation, their affiliated organizations, their authorized representatives, and their respective trustees." See First Proposed Agreement, ¶ 4(D) (d/e 27-4).

[2] Defendant attached the redline draft at d/e 27-7. The changes included striking the "successor liability" language, adding language regarding no admission of liability, and striking "affiliated organizations" in paragraph 4(D).

counsel he was unsure whether his clients would accept the redlined draft, but indicated he would relay the changes to them. Peterson Aff. ¶ 4.

According to Plaintiffs, on December 8, 2014, Plaintiffs' counsel informed Defendant's counsel that Plaintiffs accepted all of Defendant's proposed changes. Shrake Aff. ¶ 7. However, Defendant's counsel claims, and the documents submitted show, that while Plaintiffs' counsel agreed to remove the phrase "affiliated organizations" from the settlement language, Plaintiffs' counsel proposed adding language that permitted disclosure to additional individuals. See Peterson Aff. ¶ 5; see also December 8, 2014 email from Shrake and Peterson (agreeing to accept all of Defendant's changes but, "[b]ased on our telephone conference on December 8, 2014, however, I have added the following language to the end of the first sentence in paragraph 4(D)") (d/e 27-6).[3]

---

[3] The proposed language was added to the end of the first sentence in paragraph 4(D) so that the disputed sentence reads as follows: "It is further hereby acknowledged by the parties that this Settlement Agreement and all the terms thereof, including, but not limited to the amount of the settlement, shall remain confidential and shall not be disclosed to entities or individuals outside of the parties to the Central District litigation, their authorized representatives, their respective trustees and, upon inquiry only, the former employees of AEH Construction, Inc., who performed covered work for AEH, Construction Inc. during the time period of April 1, 2009 through November 30, 2012." Plaintiffs' redline Agreement, d/e 24-3 (new language underlined).

Defendant's counsel told Plaintiffs' counsel that he did not believe that the language was troublesome but that he would have to review it with Defendant to ensure that the language would not permit disclosure to individuals or entities which may have a successor liability claim against Defendant. Peterson Aff. ¶ 7. Defendant's counsel told Plaintiffs' counsel that he would contact Plaintiffs' counsel once he had the opportunity to review the proposed language with Defendant. <u>Id.</u> ¶7. That same day, Plaintiffs' counsel sent Defendant's counsel correspondence memorializing the language to be inserted. <u>Id.</u> ¶ 6; December 8, 2014 email from Shrake to Peterson (d/e 27-6).

On December 9, 2014, Plaintiffs' counsel sent Defendant's counsel the signed signature page of the settlement documents purportedly memorializing the parties' agreed-upon terms. Shrake Aff. ¶ 8. On December 9, 2014, when Defendant's counsel received the signed copy of the new draft settlement agreement, Defendant's counsel had not yet had the opportunity to review the proposed language with Defendant and had not notified Plaintiffs' counsel that Defendant was agreeable to the proposed language. Peterson

Aff. ¶ 8. After a couple of inquiries, Plaintiffs' counsel finally received a telephone call on December 22, 2014 from Defendant's counsel informing Plaintiffs' counsel that Defendant refused to sign the Settlement Agreement. Shrake Aff. ¶ 9. Defense counsel told Plaintiff's counsel that Defendant would not abide by the terms of the settlement because Defendant had been sued by another fringe benefit fund. Id.

### IV. ANALYSIS

The Court finds that no evidentiary hearing is necessary because the material facts regarding the existence or terms of the agreement are not in dispute and there is ample evidence for the Court to decide the issue without an evidentiary hearing. See Pritchett v. Asbestos Claims Mgmt. Corp., 332 Ill. App. 3d 890, 899 (2002); Hakim, 272 F.3d at 935 (finding that ample evidence, consisting of the briefs, affidavits, and record evidence, supported the district court's finding that a binding settlement agreement existed such that an evidentiary hearing was not required). The slight differences in the parties' recitation of the facts is clarified by the written documents submitted by the parties. Because the Court

is not holding an evidentiary hearing, there is no need for counsel to testify and, therefore, no need for counsel to withdraw.

The Court now turns to the issue before it: whether an enforceable oral agreement was made on September 30, 2014 or whether the parties conditioned the final acceptance of the agreement on the negotiation of (among other things) the confidentiality provision.  The Court finds that the parties conditioned a binding settlement agreement on the parties reaching a mutually acceptable confidentiality agreement.

Under Illinois law, an oral settlement agreement is binding where there is an offer, acceptance, and a meeting of the minds regarding the terms of the agreement. See Quinlan v. Stouffee, 355 Ill. App.3d 830, 837 (2005).  The material terms of the agreement must be definite and certain.  Id.  If the material terms are agreed upon, the oral agreement is binding even if non-material terms are missing or reserved for later discussion. Tujetsch v. Bradley Dental, LLC, No. 09 C 5568, 2010 WL 5099981, at * 2 (N.D. Ill. Dec. 8, 2010) (Illinois law).  Moreover, a contract can be formed even if the exact language is not determined, but there must be some agreement about what the provision must say.  For example, in

Higbee v. Sentry Ins. Co., 253 F.3d 994, 998 (7th Cir. 2001), the Seventh Circuit found that the parties "agreed on little more than the fact that the settlement agreement would contain a confidentiality and non-disparagement clause, and further negotiation was necessary to come to a specific agreement." The plaintiff had made it clear in open court that she would not settle without a confidentiality clause. Id. Therefore, the confidentiality clause was material. Id. Because the settlement conference adjourned without "hashing out" the details of the confidentiality provision, no oral settlement was reached. Id. (also noting that a party's subjective unarticulated beliefs do not preclude a finding that a contract was formed).

The mere fact that parties anticipate the execution of a written document does not necessarily mean that the oral agreement is not binding. See, e.g., In re Gibson-Terry and Terry, 325 Ill. App. 3d 317, 323-24 (2001) (finding no evidence that the parties' intention to enter a written agreement was a condition precedent to the binding effect of the oral agreement). Nonetheless, no "magic language" is required to condition the finality of an agreement on a subsequent event. See PFT Roberson, Inc. v. Volvo Trucks N.A.,

Inc., 420 F.3d 728, 732 (7th Cir. 2005) (Illinois law) (noting that "[w]ords expressing contingency or dependence on a subsequent event or agreed-on element will do" to demonstrate that an agreement is subject to future negotiation and documents); Lampe v. O'Toole, 292 Ill. App. 3d 144, 147 (1997) (noting that "[w]hether the parties intended to condition a settlement on the execution of a writing is a question of fact" and finding no evidence to suggest the parties agreement hinged on the execution of a written release).

In this case, the parties viewed the confidentiality provision as material and they conditioned the settlement on, in part, a mutually agreeable confidentiality provision. The September 30, 2014 email from Plaintiffs' counsel to Defendant's counsel provides:

> Please be advised that the Central Laborers' Pension, Welfare and Annuity Fund Delinquency Committee approved the $22,000.00 lump sum settlement payment by Mid-West Illinois Concrete Construction, which would include a final release through November 2012 and a confidentiality provision.

d/e 24-2; see also Shrake Aff. ¶ 1 (providing that Defendant's counsel offered a settlement for a lump sum of $22,000 "with the payment being contingent upon no admission of liability and a

mutual and final release through November 2012 with a confidentiality provision").

The parties have not pointed to any evidence suggesting the parties had a "meeting of the minds" about what the confidentiality provision would contain. In fact, the evidence of what occurred after the September 30 offer and acceptance suggests the parties did not have "some agreement" about what the confidentiality provision would say. As such, a binding agreement was not reached because the parties did not have a "meeting of the minds" on a material term. See, e.g., Quinlan, 355 Ill. App. 3d at 839 (finding that a valid contract was not formed because there was no meeting of the minds on the required level of future repair of the driveway and the mechanism for resolving future disputes); Simmons v. Collection Prof'l, Inc., No. 09-cv-1198, 2010 WL 2663100, at *2 (C.D. Ill. June 25, 2010) (finding no settlement agreement was reached where the parties did not agree on the scope of the release and that term was material); IMI Norgren, Inc. v. D & D Tooling Mfg., Inc., 306 F.Supp.2d 796, 802 (N.D. Ill. 2004) (finding no settlement agreement was reached where, among other reasons, the plaintiff accepted the defendant's offer of $300,000 to

be paid $30,000 up front and the remaining $270,000 over nine years but that the note would be subject to some security from the defendant because security was a material term and the term security was too indefinite). Moreover, the fact that the parties may have ultimately agreed to the language (a fact that is not clear here because the Court does not know if Defendant ultimately agreed to the language proposed by Plaintiffs), does not mean that a binding agreement was reached earlier. See Higbee, 253 F.3d at 998 (even though parties eventually agreed to mutually satisfactory language, that does not change that an agreement was not reached earlier where the confidentiality provision was a material term and the parties agreed on little more than that such a provision would be included in the written settlement agreement).

This case is distinguishable from Dillard v. Starcon Int'l, Inc., 483 F.3d 502 (7th Cir. 2007). In Dillard, the plaintiff did not dispute that the parties' oral discussions resulted in an agreement on certain material terms. The plaintiff claimed, however, that the agreement was not final because no agreement had been reached on other material terms, as evidenced by the parties' exchange of written drafts of the agreement. The court held that those other

terms were not material because those terms did not implicate the "heart of their settlement." Id. at 508. In contrast here, the evidence shows that the parties understood that the confidentiality provision was an important component of the settlement.

The Court is troubled by the argument Defendant's counsel made at the status hearing. At the hearing, Defendant's counsel argued that a term of the settlement agreement was that the settlement would be completed before any additional claims against Defendant were made by another party. There is no evidence that such a term was part of the negotiations. Nonetheless, because the Court finds that a confidentiality provision was a material term of the settlement, and the parties had not agreed to the language of such provision on September 30, 2014, no binding oral agreement was reached on that date or any time before Defendant withdrew from the settlement negotiations.

## V. CONCLUSION

For the reasons stated, the Motion to Enforce Settlement (d/e 23) is DENIED.

ENTER: March 31, 2015

FOR THE COURT:

                                              s/Sue E. Myerscough
                                              SUE E. MYERSCOUGH
                                              UNITED STATES DISTRICT JUDGE