IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTRAL LABORERS' PENSION FUND, CENTRAL )
LABORERS' SUPPLEMENTAL PENSION FUND,     )
CENTRAL LABORERS' WELFARE FUND, CENTRAL  )
LABORERS' RETIREE WELFARE FUND, CENTRAL  )
LABORERS' ANNUITY FUND, CENTRAL          )
LABORERS' ANNUITY PREMIUM FUND, ILLINOIS )
LABORERS' AND CONTRACTORS' JOINT         )
APPRENTICESHIP & TRAINING PROGRAM,       )
NORTH CENTRAL ILLINOIS LABORERS'         )
HEALTH & WELFARE FUND, CENTRAL ILLINOIS  )
LABORERS'-EMPLOYERS' COOPERATIVE         )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS  )
LABORERS'-EMPLOYERS' COOPERATIVE         )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS  )
MIDWEST REGIONAL ORGANIZING COMMITTEE,   )
NORTH CENTRAL ILLINOIS MARKET            )
PRESERVATION FUND, LABORERS' OF ILLINOIS )
VACATION FUND, SOUTHERN AND CENTRAL      )
VACATION FUND, CENTRAL ILLINOIS LEGAL    )
SERVICES FUND, SUBSTANCE ABUSE TESTING   )
FUND, LABORERS' LOCAL 362, and LABORERS' )
LOCAL 538,                               )
                                         )
     Plaintiffs,                         )
                                         )
v.                                       ) No. 14-3052
                                         )
AEH CONSTRUCTION, INC., and MID-WEST     )
ILLINOIS CONCRETE CONSTRUCTION, INC.,    )
                                         )
     Defendants.                         )

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiffs' Combined Motion and Memorandum to Avoid Fraudulent Transfers pursuant to 740 ILCS 160/6(b) (d/e 38).  The Motion is set for an evidentiary hearing on October 5, 2015 at 10:00 a.m., at which time Thomas Hensley may assert his claim in these supplementary proceedings.

## I. BACKGROUND

In February 2014, Plaintiffs filed a lawsuit against AEH Construction, Inc. (AEH) and Mid-West Illinois Concrete Construction, Inc. (Mid-West) under the Employee Retirement Income Security Act of 1974 (ERISA).  The lawsuit pertains to AEH's alleged failure to pay certain contributions on behalf of employees who are members of the union and participants in Plaintiffs' employee benefit funds.  See Complaint (d/e 1).  In Count I, Plaintiffs allege that AEH owes audit liabilities, delinquent contributions, report form shortages, liquidated damages and audit costs in the amount of $22,001.16 as well as other unpaid contributions and liquidated damages found owing at the time judgment is rendered.  Count II alleges that Mid-West, as the successor company to AEH, is liable for the delinquent contributions and costs owed by AEH.

On May 5, 2014, United States Magistrate Judge Tom Schanzle-Haskins entered an Order of Default against AEH only. See Order (d/e 12). On June 20, 2014, this Court entered an Order of Default Judgment against AEH. See Order (d/e 22). The case remained pending against Mid-West.

On May 1, 2015, a Citation to Discover Assets directed to Thomas Hensley, President of AEH, was issued (d/e 32). On May 29, 2015, Magistrate Judge Schanzle-Haskins[1] held a Citation to Discover Assets hearing. Mr. Hensley appeared. At the conclusion of the hearing, Judge Schanzle-Haskins continued the citation generally to allow Mr. Hensley time to produce further documentation.

On July 13, 2015, Plaintiffs filed a Combined Motion and Memorandum to Avoid Fraudulent Transfers Pursuant to 740 ILCS 160/6(b) (d/e 38). Upon review of the Motion, this Court entered a Text Order questioning whether Plaintiffs could pursue proceedings in aid of execution of a judgment where a final judgment had not been entered. See August 4, 2015 Text Order. The Court directed

---

[1] On July 23, 2015, Judge Schanzle-Haskins recused himself from participation in this matter. The case is now assigned to Magistrate Judge Jonathan Hawley.

Plaintiffs to file a memorandum addressing whether the Court could proceed on the supplementary proceedings.  Id.

On August 17, 2015, Plaintiffs filed a Memorandum (d/e 41) addressing the issue identified in the Court's August 4, 2015 order.  Plaintiffs concluded that the Court would need to enter a Rule 54(b) certification prior to proceeding on the supplementary proceedings.

That same day, Plaintiffs filed the Combined Motion and Memorandum to Certify the Order of Default Judgment (d/e 42) pursuant to Rule 54(b) at issue herein.  The Court granted the Combined Motion to Certify in an Opinion filed September 15, 2015.  The Court expressly determined, pursuant to Federal Rule of Civil Procedure 54(b), that there was no just reason to delay in the entry of a final judgment on the Order of Default Judgment nunc pro tunc.  See Opinion (d/e 47).

Now that a final judgment has been entered, the Court turns to the pending Combined Motion and Memorandum to Avoid Fraudulent Transfers Pursuant to 740 ILCS 160/6(b).  The Combined Motion was served upon AEH (through Mr. Hensley, President of AEH), and counsel for Mid-West.  No responses have been filed.

In the Combined Motion, Plaintiffs contend that AEH made fraudulent transfers to Mr. Hensley and that the transfers should be avoided.

## II. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 69(a), proceedings supplemental to a judgment "must accord with the procedure of the State where the court is located, but a federal statute governs to the extent that it applies." Fed. R. Civ. P. 69(a). In Illinois, a judgment creditor may prosecute supplementary proceedings to discover assets and compel application of non-exempt assets or income toward the judgment. 735 ILCS 5/2-1402(a). The judgment becomes a lien when the citation is served in accordance with the statute. 735 ILCS 5/2-1402(m). Illinois courts have allowed fraudulent conveyance actions to be pursued in connection with supplementary proceedings. See Central Laborers' Pension Fund v. Alliance Commercial Concrete, Inc., No. 08-3065, 2014 WL 3376890, at *3 (C.D. Ill. July 10, 2014) (Mills, J.), citing Alan Drey Co., Inc. v. Generation, Inc., 22 Ill. App. 3d 611 (1974); Meggison v. Stevens, 21 Ill. App. 3d 505 (1974).

A. **In Light of the Rule 54(b) Certification, this Court Has Jurisdiction Over the Combined Motion to Avoid Fraudulent Transfers**

As the recitation of the facts above shows, the supplemental proceedings in this case began in May 2015, before this Court made its Rule 54(b) finding which rendered the judgment final. Under Illinois law, supplemental proceedings are not available to creditors until a final judgment has been entered. Dexia Credit Local v. Rogan, 629 F.3d 612, 620-21 (7th Cir. 2010) (citing Marble Emporium, Inc. v. Vuksanovic, 339 Ill. App. 3d 84, (2003);Ill. Sup. Ct. R. 277(a); 735 ILCS 5/2-1402(a)). This raises the question whether the supplementary proceedings are void, in which case, Plaintiffs would have to recommence the supplementary proceedings by serving a new Citation to Discover Assets.

Very little case law exists on this precise issue. The most similar case is Dexia, 629 F.3d 612, which supports a finding that the Plaintiffs should not have to recommence the supplementary proceedings.

In Dexia, the plaintiff obtained a default judgment against defendant Peter Rogan and his partner companies in May 2007. Dexia, 629 F.3d at 617. The district court did not make any

findings pursuant to Rule 54(b), despite the fact that the judgment did not dispose of the claim against one of the defendants, Bainbridge Management L.P. (Bainbridge LP), who was in bankruptcy and subject to an automatic stay. Id. at 618.

The plaintiff began supplementary proceedings to locate Rogan's assets, and, as part of those proceedings, the plaintiff served citations to discover assets on the trustee of the Rogan Children Trusts and the individual adult children (Rogan Children). Id. at 618. The Rogan Children challenged the plaintiff's request to turn over the assets held in the trusts. Id.

During the supplementary proceedings, the district court discovered that two of the defendants in the plaintiff's underlying suit—including Bainbridge LP, the defendant in bankruptcy—held dual citizenship, which destroyed diversity jurisdiction. Dexia, 629 F.3d at 618. Therefore, the court dismissed those two defendants pursuant to Federal Rule of Civil Procedure 21 as nondiverse, dispensable parties. Id. The court also recognized for the first time that the May 2007 default judgment was not final because it had not disposed of the claim against Bainbridge LP. Id. The court ruled, however, that by dismissing the dispensable parties,

including Bainbridge LP, the May 2007 default judgment became retroactively final as of May 2007.  Id.

The Seventh Circuit agreed, finding that Rule 21 dismissals are retroactive.  Id. at 621.  The Seventh Circuit also noted that "the district court's actions were entirely consistent with considerations of finality in those situations where a judgment becomes final during the pendency of an appeal."  Id. at 622.  That is, when a nonfinal order is appealed, the Seventh Circuit allows a district court to enter a nunc pro tunc order to make the nonfinal order final and confer jurisdiction on the appellate court.  Id.  The Seventh Circuit concluded that the "retroactive application of Rule 21 rendered the judgment final and enforceable against [the] remaining parties, and the court did not err in allowing the matter to proceed upon the citations that had already issued."  Id.

While the case sub judice does not involve a Rule 21 dismissal, this case does involve a nunc pro tunc order, which made the nonfinal order final as of the date it was originally entered.  See, e.g., Brown v. Columbia Sussex Corp., 664 F.3d 182, 190 (7th Cir. 2011) (recognizing that a Rule 54(b) certification entered nunc pro tunc makes a nonfinal order constructively

appealable as of the date the order was originally entered). Moreover, nothing would be gained by requiring Plaintiffs re-issue the Citation to Discover Assets. See, e.g., Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co., 642 F.2d 1065, 1074 (7th Cir. 1981) ("Dismissal of the appeal here because of the belated certification would be empty paper shuffling"). In fact, the parties acted as though a final order had been entered—Plaintiffs by proceeding with supplementary proceedings and AEH by asserting no objection to supplementary proceedings. Moreover, Mr. Hensley participated in the citation proceeding and produced documents in response thereto. See, e.g., Philips Med. Sys., Int'l B.V. v. Bruetman, 791 F. Supp. 731, 732-33 (N.D. Ill. 1992) (denying motion to quash citation to discover assets, finding the defendant waived the right to challenge the citation by responding to the citation, producing documents, and originally taking the position that the judgment was a final order).

  When this Court entered the nunc pro tunc order, the nonfinal order was made final as of the date it was originally entered. As a result, this Court has jurisdiction over Plaintiffs' Uniform

Fraudulent Transfer Act claim.  See <u>Trade Solutions, Inc. v. Eurovictory Sports, Inc.</u>, No. 97 C 1153, 1998 WL 792486 at *5 (N.D. Ill. Nov. 9, 1998) (wherein the district court, after discovering during supplementary proceedings that the order was not final, entered an order finding no just reason for delay and concluded that the court then had jurisdiction over the plaintiff's Uniform Fraudulent Transfer Act claim).

**B.    The Court Sets the Fraudulent Transfer Act Claim For a Hearing**

The Uniform Fraudulent Transfer Act provides that certain transfers made by a debtor are fraudulent:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

740 ILCS 160/6(b).  The Fraudulent Transfer Act defines a creditor as "a person who has a claim" and a debtor as "a person who is liable on a claim."  740 ILCS 160/2(d), (f).  A claim is defined as "a right to payment, whether or not the right is reduced to judgment . . . ."  740 ILCS 160/2(c).  Pursuant to 740 ILCS 160/8(a)(1), a creditor may obtain "avoidance of the transfer or obligation

necessary to the extent necessary to satisfy the creditor's claim." In addition, where a judgment creditor has obtained judgment against a debtor, "the creditor, if the court so orders, may levy execution on the asset transferred. 740 ILCS 160/8(a)(1); 740 ILCS 160/8(b).

Plaintiffs assert that AEH made fraudulent transfers to Mr. Hensley. The transfers at issue are: (1) Check No. 4101 from AEH to Mr. Hensley in the amount of $8,000 dated July 14, 2014; (2) Check No. 4102 from AEH to Mr. Hensley in the amount of $8,000 dated July 14, 2014; and (3) Check No. 4103 from AEH to Mr. Hensley in the amount of $6,200 dated July 14, 2014.[2] See Combined Mot., Ex. A. Plaintiffs contend that all of the criteria for fraudulent transfers under 740 ILCS 160/6(b) exist.

The Court finds that Plaintiffs have made a sufficient showing such that Mr. Hensley must be given notice of the proceedings and an opportunity to appear and assert his claim prior to an entry of judgment avoiding the transfers. Meggison, 21 Ill. App. 3d at 509 ("The statutes and rules which govern supplementary proceedings all contemplate that a third party claiming an interest in the

---

[2] Although additional sums were transferred to Mr. Hensley following the default judgment, Plaintiffs recognize that only $22,200 is within the statute of limitations for fraudulent transfers under 740 ILCS 160/6(b).

property involved must be given a 'trial as in other cases'; hence, must be given a full opportunity to present and maintain his or her claim") (citations omitted); Dexia, 629 F.3d at 625 (finding that third parties challenging the turnover order were not entitled to a jury trial as opposed to a bench trial in supplemental proceedings because the relief sought was equitable); Alliance Commercial, 2014 WL 3376890 at *6 (finding that the transfer of vehicles showed an actual intent to hinder, delay or defraud but setting the matter for a hearing to determine whether the transfers were fraudulent transfers).

First, Plaintiffs' claim arose before the transfer was made. The Fraudulent Transfer Act defines a claim as

> a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

740 ILCS 160/2(c).  Plaintiffs demanded $22,313.56 from AEH as early as December 13, 2012.  See Combined Motion, Ex. B (d/e 38-2).  AEH acknowledged the claim on January 9, 2013.  Id. Exhibit C.  On June 20, 2014, the Court entered the Order of Default

Judgment. The transfers occurred on July 14, 2014. Clearly, Plaintiffs' claim arose before the transfers were made.

Second, the transfers were likely made to an insider. If the debtor is a corporation, the Fraudulent Transfer Act defines an "insider" to include a director, officer, or person in control of the debtor. 740 ILCS 160/2(g)(2)(A)-(C). The transfers were made by AEH to Mr. Hensley. Mr. Hensley was both a director and an officer of AEH. See Combined Motion, Ex. D, Illinois Secretary of State Corporation File Detail Report.

Third, the transfers were likely made for an antecedent debt (i.e., a debt that occurred prior to Plaintiffs' claim). Mr. Hensley had three outstanding shareholder loans to AEH dated October 14, 2008, November 1, 2011, and January 1, 2012. See Combined Mot., Ex. E. The antecedent debts were incurred before Plaintiffs' December 13, 2012 claim (which was reduced to judgment June 20, 2014). As of March 20, 2012, AEH owed Mr. Hensley $55,411.72 for Shareholder Note 1, $7,573.79 for Shareholder Note 2, and $188,313.66 for Shareholder Note 3. Id. Mr. Hensley also indicated that check Nos. 4101, 4102, and 4103 were "for payment of past due notes made to AEH by Tom Hensley." Id. Ex. G.

Therefore, the payments represented by check Nos. 4101, 4102, and 4103 appear to be for payment of an antecedent debt.

Fourth, Plaintiffs have presented evidence that AEH was insolvent at the time the transfer was made.  The Fraudulent Transfer Act presumes that a "debtor who is generally not paying his debts as they become due" is insolvent.  740 ILCS 160/3(b).  AEH defaulted on multiple loans it had from Farmers and Mechanics Bank (F & M Bank).  On January 22, 2013, F & M Bank sent AEH a letter advising that the Bank had declared a default on the AEH business loan as of January 18, 2013 and accelerated the balances due.  Exhibit H.  The nature of the default on the business loan included failing to make timely payments on the loan.  Id.

Plaintiffs assert that after the declaration of default, AEH opened a new checking account and used the new account to wind-down the corporate affairs of AEH.  Mot. ¶ 23.  Plaintiffs also assert that, during this time, AEH effectively ceased operations due to the company's default.  Id. ¶ 24.  In April 2013, AEH, Mr. Hensley, and F &M Bank reached a Workout Settlement Agreement, which largely resolved AEH Construction, Inc.'s default. Id.  The Illinois Secretary of State Corporation File Detail Report shows that AEH was

involuntarily dissolved on August 8, 2014 (one month after the transfers at issue herein). The Court finds that this evidence all suggests that AEH was insolvent when the transfers were made.

Finally, Plaintiffs have presented evidence that Mr. Hensley, an insider, had reasonable cause to believe the debtor was insolvent. As the sole shareholder and director, as well as the President, Secretary, and Treasurer of AEH, Mr. Hensley had reasonable cause to believe that AEH was insolvent. See Mot. to Dismiss, Exhibit D (wherein Mr. Hensley identifies himself as the sole shareholder, director, and President, Secretary, and Treasurer of AEH). Moreover, Mr. Hensley was involved in the F&M Bank default process and reached a settlement with F&M Bank.

As noted above, a judgment creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim", and, where a judgment creditor has obtained judgment against a debtor, "the creditor, if the court so orders, may levy execution on the asset transferred." 740 ILCS 160/8(a)(1); 740 ILCS 160/8(b). Plaintiffs state they are willing to provide Mr. Hensley with an opportunity to appear and assert his claim in the supplementary proceedings. After such proceeding, the Court

would have the power to avoid the transfers to the extent necessary to satisfy, in part, Plaintiffs' claims if the Court finds the transfers fraudulent. N.L.R.B. v. Int'l Measurement & Control Co., Inc., 978 F.2d 334, 338 (7th Cir. 1992) (finding conveyance fraudulent under section 6(b) of the Uniform Fraudulent Transfer Act where that the defendant paid off debts to insiders when the defendant was insolvent and the insiders knew the defendant was insolvent).

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Combined Motion and Memorandum to Avoid Fraudulent Transfers Pursuant to 740 ILCS 160/6(b) (d/e 38) is set for an evidentiary hearing on October 5, 2015 at 10:00 a.m. in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Plaintiffs shall notify all affected persons or entities of the hearing. At the hearing, the Court will determine whether the three transfers from AEH to Mr. Hensley were fraudulent transfers.

ENTERED: September 17, 2015

FOR THE COURT:

                                        s/Sue E. Myerscough
                                    SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE