# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

CENTRAL LABORERS' PENSION FUND, CENTRAL )
LABORERS' SUPPLEMENTAL PENSION FUND,      )
CENTRAL LABORERS' WELFARE FUND,CENTRAL)
LABORERS' RETIREE WELFARE FUND, CENTRAL)
LABORERS' ANNUITY FUND, CENTRAL           )
LABORERS' ANNUITY PREMIUM FUND, ILLINOIS )
LABORERS' AND CONTRACTORS' JOINT          )
APPRENTICESHIP & TRAINING PROGRAM,        )
NORTH CENTRAL ILLINOIS LABORERS'          )
HEALTH & WELFARE FUND, CENTRAL ILLINOIS )
LABORERS'-EMPLOYERS' COOPERATIVE          )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS )
LABORERS'-EMPLOYERS' COOPERATIVE          )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS )
MIDWEST REGIONAL ORGANIZING COMMITTEE,)
NORTH CENTRAL ILLINOIS MARKET             )
PRESERVATION FUND, LABORERS' OF ILLINOIS )
VACATION FUND, SOUTHERN AND CENTRAL       )
VACATION FUND, CENTRAL ILLINOIS LEGAL     )
SERVICES FUND, SUBSTANCE ABUSE TESTING  )
FUND, LABORERS' LOCAL 362, and LABORERS'  )
LOCAL 538,                                )
                                          )
    Plaintiffs,                               )
                                          )
    v.                                        ) No. 14-3052
                                          )
AEH CONSTRUCTION, INC., and MID-WEST      )
ILLINOIS CONCRETE CONSTRUCTION, INC.,     )
                                          )
    Defendants.                               )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the parties' cross-motions for summary judgment. See d/e 44; d/e 45. Because genuine issues of material fact remain, the Motions are DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff Central Laborers' Pension Fund serves as the collection agent for the other named Plaintiffs, which are multi-employer fringe benefit funds, labor organizations, labor-management committees and/or funds established pursuant to collective bargaining agreements between the Laborers' International Union of North America and certain employer associations whose employees are covered by said collective bargaining agreements. In February 2014, Plaintiffs filed a lawsuit against AEH Construction, Inc. (AEH) and Mid-West Illinois Concrete Construction, Inc. (Mid-West) under the Employee Retirement Income Security Act of 1974 (ERISA). The lawsuit alleges that AEH failed to pay certain contributions on behalf of employees who are members of the union and participants in Plaintiffs' employee benefit funds. See Complaint (d/e 1). In Count I, Plaintiffs allege that AEH owes audit liabilities, delinquent contributions, report form shortages, liquidated damages, and audit

costs in the amount of $22,001.16, as well as other unpaid contributions and liquidated damages found owing at the time judgment is rendered.  Count II alleges that Mid-West, as the successor company to AEH, is liable for the delinquent contributions and costs owed by AEH.

In June 2014, Plaintiffs obtained a default judgment against AEH.  See Order of Default Judgment (d/e 22); see also Opinion (d/e 47) (amending June 20, 2014 Order of Default Judgment to include language that there was no just reason to delay in the entry of a final judgment on the Order of Default Judgment nunc pro tunc).  The Court awarded Plaintiffs a total of $25,391.66, which consisted of audit liabilities, delinquent contributions, report form shortages, liquidated damages, and audit costs in the amount of $22,001.16, reasonable attorney's fees in the amount of $2,953.50, and costs in the amount of $437.  The case remained pending against Mid-West.

In August 2015, Plaintiffs and Mid-West each filed Motions for Summary Judgment.  Plaintiffs assert that the undisputed material facts show that Mid-West is the successor of AEH.  Mid-West

asserts that the undisputed material facts show that Mid-West is not the successor of AEH.

## II. FACTS

The following facts are taken from the parties' statements of undisputed facts and other evidence in the record. Where a fact relied on is not contained in a party's statement of undisputed fact, the Court cites the record.

## A.   Facts Pertaining to the Formation and Operation of AEH

AEH was a construction company that was formed on April 4, 1983 and was involuntarily dissolved by the Illinois Secretary of State on August 8, 2014. AEH operated from a building it owned at 1920 Lacon Drive, Galesburg, Illinois.

AEH performed various types of construction including miscellaneous concrete construction, curb and gutter work, intersections, base pavements, driveway pavements, sidewalks, road patches, and bridge deck sealing. Mid-West asserts that this list is not exhaustive and that AEH also put scales in two scale houses. Moreover, the vast majority of road patch work performed by AEH was considered heavy patch work in the construction industry, was normally performed on interstates, and took a crew of

between 15 and 25 employees between 2 weeks and 2 months to complete.  AEH also performed snow removal services during the winter months for Cottage Hospital, Hy-Vee, and Kerasotes Theaters (now AMC).  For the last few years AEH was in operation, AEH performed more bridge deck sealer projects and fewer concrete projects.  Hensley Dep. at 17-18 (d/e 45-10).

Thomas Hensley was the president, secretary, and treasurer of AEH, as well as the sole shareholder and director.  Hensley, as president of AEH, signed a Memorandum of Agreement with North Central Illinois Laborers' District Council, which included Local Unions Nos. 32, 82, 109, 165, 231, 287, 309, 362, 393, 422, 538, 727, 751, 852, 911, 991, 996, and 1203, and covered both "building" and "heavy/highway" work.  In his role as president of AEH, Hensley spent most of his time doing paperwork, estimating contracts, and filling out required forms for bids.  Henlsey Dep. at 16.

Although Plaintiffs assert it is immaterial, Plaintiffs do not dispute that in 2010, AEH employed 105 persons through the year.  Hensley testified that AEH had six or seven full-time employees and the rest came from the union hall as needed.  Hensley Dep. at 14.

Those regular employees included Jeff Hughes, Cory Storm, Michael Hensley, Terry Jackson Sr., Terry Jackson, Jr., and an individual named John.  Hensley Dep. at 15.  The parties do not dispute that AEH employed, among others, Cory Storm, Michael Hensley, Terry Jackson, Sr., Terry Jackson, Jr., and Roy Matthews.  AEH remitted contributions to Plaintiffs on behalf of the following Laborers' Local 538 members: Cory Storm, Michael Hensley, and Terry Jackson, Jr.

Plaintiffs also assert that AEH's revenue is immaterial but admit that AEH had gross revenue of $2,437,217 in 2010 and $2,301,351 in 2011.  AEH did not file a corporate tax return for 2012.  Hensley Second Supp. Aff. ¶ 1 (d/e 53-1).

**B.    Facts Pertaining to the Formation and Operation of Mid-West**

Mid-West is a construction company that was formed on April 4, 2013.  Mid-West performs various types of construction, including miscellaneous concrete construction, curb and gutter work, approaches, patios, garage floors, driveway pavements, sidewalks.  Mid-West also performed one bridge deck sealing project.  The road patch work performed by Mid-West is considered light patch work in the construction industry and is performed

mainly for utilities.  The work takes a crew of 1 to 2 employees between 2 hours a day to complete.  Mid-West has also performed snow removal services during the winter months for Cottage Hospital, Hy-Vee, and Kerasotes Theaters (now AMC).

Hensley is the president of Mid-West.  Mid-West operates out of Hensley's residence in Galesburg, Illinois.  Hensley works in the field but still does the bid work and estimating.  Hensley Aff. at 37.

 Deborah Richison (Hensley's sister) is the secretary and treasurer of Mid-West and is identified as the sole owner of Mid-West, as well as the holder of all of the corporate stock.  However, Plaintiffs dispute that Richison is the actual owner of Mid-West and argue instead that she is a strawman/figurehead owner.  The parties dispute the amount of money Richison personally invested into the company.

Richison has not received any corporate distributions or compensation as an officer.  Hensley received compensation for being an officer of Mid-West in 2013, 2014, and 2015.  Hensley, as president of Mid-West, personally guaranteed all of the loans Mid-West had with Tompkins State Bank.  Hensley also took out a home equity line of credit and used his personal credit for Mid-West.

Hensley, as president of Mid-West, signed a "heavy/highway" collective bargaining agreement with Laborers' Local 538, a "heavy/highway" collective bargaining agreement with Laborers' Local 165, a Memorandum of Agreement with Laborers' Local 231, which covers both "building" and "heavy/highway" work, and a "heavy/highway" collective bargaining agreement with Laborers' Local 309.

Although Plaintiffs assert it is immaterial, Plaintiffs do not dispute that in 2013, Mid-West employed 21 individuals through the year.  In 2014, Mid-West employed 29 individuals through the year.

It is undisputed that Mid-West has, or has had, employees who were employees of AEH.  Hensley testified that Mid-West's full time employees included Michael Hensley, Terry Jackson, Sr., Terry Jackson Jr., and Chuck Thompson.  Hensley Dep. at 46.  The parties do not dispute that Mid-West employed Cory Storm, Michael Hensley, Terry Jackson, Sr., Terry Jackson, Jr., and Roy Matthews. Mid-West remitted contributions to Plaintiffs on behalf of the following Local 538 members: Cory Storm, Michael Hensley, Terry Jackson, Jr., and Roy Matthews.   As such, it appears to the Court

that three out of four of Mid-West's full-time employees previously worked as full-time employees for AEH.

Mid-West asserts that it does not employ all of the employees that were employed at AEH and employs at least 20 individuals who were not employed by AEH. Plaintiffs dispute the materiality of Mid-West employing 20 individuals not employed by AEH, asserting that the proper inquiry is whether the successor corporation's regular employees worked for the predecessor corporation. Plaintiffs also assert that the employees that both AEH and Mid-West used accounted for 73% of the wages paid by Mid-West in 2013 and 65% of the wages paid by Mid-West in 2014 (not including Mid-West's officer manager Joni Kirkman's wages in the calculation). Pls. Resp. at 23-24 (d/e 48); Pls. Reply at 7, citing Ex. 1 (d/e 52).

Mid-West asserts that it generated gross revenue of $500,721 in 2013. Hensley Aff. ¶ 7 (d/e 44-5).

## C. Farmers and Mechanics Bank Calls Its Loans to AEH and AEH Stops Operating

In September 2012, AEH sold the majority of its assets to help fund operations. Hensley Supp. Aff. ¶ 4 (d/e 46-1). In January

2013, Farmers and Mechanics Bank (F&M Bank) called its loans to AEH and accelerated the amounts due.  See Hensley Dep. at 21; Hensley Aff. ¶ 13.  Hensley had personally guaranteed the loans with F&M Bank.  See Workout Settlement Agreement, Mot. for Summ., Ex. II.2 (d/e 45-12) (identifying Hensley and AEH as the debtor).

On April 18, 2013 (shortly after the formation of Mid-West), F&M Bank and AEH executed a Workout Settlement Agreement that provided that F&M Bank would take possession of the real property, equipment, and vehicles belonging to AEH with the exception of the vehicles and equipment listed in the Schedule I to the Agreement.  Hensley Aff. ¶ 14; Workout Settlement Agreement at ¶ 8 (d/e 44-9).  With regard to the vehicles and equipment on the Schedule I, AEH was allowed to use the listed vehicles and equipment subject to F&M Bank's right to repossess them. Workout Settlement Agreement at ¶ 8.  The vehicles and equipment listed on Schedule I included: a 2000 3/4-ton Chevrolet pickup; a 1999 1-ton Chevrolet dump truck; 2008 1-ton Chevrolet pickup; 1992 Hullco trailer; 2000 Barlow trailer; a Volvo mini-excavator;

and an Ingersol Rand Air compressor.  <u>See</u> Schedule I to Workout Settlement Agreement (d/e 44-9).

Hensley testified that AEH ceased operation when F&M called the loan.  Hensley Dep. at 20.  However, he also testified that he believed AEH would be able to continue after the Workout Settlement Agreement was executed, just on a smaller scale. Hensley Dep. at 23-25.  Hensley tried, but failed, to obtain new financing for AEH.  Id. 25.  However, AEH performed some snow plowing after F&M called the loan.  <u>Id.</u> at 20-21.

**D.   Mid-West's Payment of $80,000 to F&M Bank**

Hensley testified that he assumed that F&M Bank would have adequate funds from the sale of the building to pay off the loans. Hensley Dep. at 24.  However, after F&M Bank sold the building, F&M Bank sought to enforce its liens on the equipment and vehicles listed on the Schedule 1.  Hensley at 28-19.  F&M Bank wanted $80,000 or the bank would take the equipment and vehicles and sell them.  <u>Id.</u> at 29.

Mid-West admits that Hensley, AEH, and F&M Bank reached an accord to settle the matter between Hensley, AEH, and F&M Bank for $80,000.  By using Mid-West's vehicles as collateral on a

$65,000 loan and by including $15,000 of its own funds, Mid-West provided the funds to settle the debt owed to F&M Bank by Hensley and AEH.  (Although Mid-West admits these facts, Mid-West argues that the payment was to satisfy Hensley's indebtedness as guarantor).

## E.   Evidence Pertaining to Vehicles and Equipment

Mid-West uses equipment and vehicles that were previously owned and used by AEH.  Mid-West also used equipment and vehicles that were, at the time of use, owned by AEH.  Specifically, Mid-West used the following vehicles, all of which were once titled in AEH's name: a 1993 Chevrolet Kodiak truck (title transferred from AEH to Mid-West on June 20, 2013); a 1978 TriStar Trailer (title transferred from AEH to Mid-West on June 20, 2013); a 1999 Chevrolet K3500 1-ton dump truck (transferred to a third party on April 6, 2015); a 2008 Chevrolet K3500 1-ton truck (currently titled in AEH's name); and a 2000 Chevrolet 3/4-ton pickup truck (title transferred from AEH to Mid-West on November 10, 2014).  Mid-West also used the Volvo mini excavator and the Ingersol Rand air compressor while the pieces of equipment were owned by AEH.  Mid-West asserts, but Plaintiffs dispute, that if Mid-West needed a

backhoe to use for projects, it would rent a backhoe and other miscellaneous equipment from Peoples Rental in Galesburg, Illinois.

The parties agree that AEH and Mid-West had different assets, but Plaintiffs dispute the context in which the fact is proffered by Mid-West.  See Pls. Resp. at 5 (d/e 48).  Plaintiffs assert that, after AEH auctioned off its assets in 2012 but prior to F&M Bank calling due its loans, AEH had, at the very least, 4 vehicles, 3 trailers, 1 air compressor, and 1 mini-excavator.  Mid-West used or had title to those vehicles and equipment (July 2013 to November 2013, see Ex. VII (d/e 45-43)).  Moreover, it was not until October 2013—after a summer's worth of work—that Mid-West purchased or possessed its first non-AEH vehicle.

## F.  Facts Pertaining to the Prairie Communications Job

Plaintiffs assert in their Motion for Summary Judgment that AEH performed one last concrete construction project after F&M called AEH's loans due.  Pls. Mot. for Sum. J. at 23 (d/e 45).   AEH bid on the sidewalk patching job for Prairie Communications in Galesburg and was awarded the job.  Hensley Dep. at 59.  In March 2013, employees from AEH, namely Hensley and his son Michael,

performed the work.  Id.  Mid-West generated an invoice for the job.
Pls. Resp., Ex. A (d/e 48-1).

Prairie Communications paid AEH for the work that was
performed.   Hensley Dep. at 59; see also Pls. Mot. for Summ. J.,
Ex. II.12.  Hensley testified that he gave 10% of the funds to AEH
for what he figured AEH's profit would have been.  Hensley Aff. at
59.  The checks were deposited in Mid-West's bank account,
although Mid-West argues that this was done to avoid having to
first transfer the funds to Mr. Hensley and then transfer the funds
to Mid-West to help fund operations.  See Ex. II.12 (the checks) (d/e
45-22); Def. Resp. at 18 (d/e 46).  Mid-West also asserts that
Hensley and his son performed the work in their individual capacity
and not as employees of AEH or Mid-West.  Hensley Supp. Aff. ¶ 1
(d/e 56-1).  Mid-West points out that the work was completed in
March 2013 (Id.), before Mid-West was incorporated.  See Mid-West
Resp. at 18.

## G.   Facts Pertaining to the Other Factors Relevant to Successor Liability

The parties agree that Mid-West never held itself out as AEH.
Plaintiffs admit that AEH and Mid-West maintained separate bank

accounts but assert that funds from AEH's bank account were used to maintain and repair vehicles that were used by Mid-West. Hensley Dep. at 91; Pls. Mot. for Summ. J., Ex. II.24 (AEH checks to Car Quest dated May 2013 and July 2013; AEH check to GRL Tire dated August 2013; AEH check to Glenn's Radiator Shop dated August 2013).

### H.   Facts Pertaining to Mid-West's Notice of AEH's Liability to Plaintiffs

The parties do not dispute that, at the time AEH ceased operations, and in no event later than March 31, 2013, Hensley was aware that Central Laborers' Pension Fund, and the other entities it acts as a collection agent for, had made a demand on AEH for the payment of certain liabilities, including delinquent fringe benefit fund contributions.  In fact, as of January 9, 2013, Hensley acknowledged and had notice of AEH's liability for contributions and other amounts owed the Central Laborers' Pension, Welfare and Annuity Funds in excess of $22,000.  On January 29, 2013, Hensley, acting as obligor and authorized agent for AEH, signed a Judgment Note that AEH would agree to pay the amounts owed the Central Laborers' Pension Fund.

Plaintiffs contend that Mid-West, at the time of incorporation, knew through Hensley that the Central Laborers' Pension Fund and the other entities it acts as a collection agent for had made a demand of AEH for the payment of certain liabilities, including delinquent fringe benefit contributions.  Mid-West admits that Hensley, as president of Mid-West, had knowledge of the alleged liabilities owed by AEH but denies that Richison, as owner and sole shareholder of Mid-West, had any knowledge of the alleged liabilities owned by AEH.  Mid-West Resp. at 3 (d/e 46).

### III. ANALYSIS

Plaintiffs assert that Mid-West is obligated to pay the contributions owed by AEH because Mid-West is the successor of AEH.  Mid-West asserts that the undisputed facts show that Mid-West is not the successor of AEH.

The successor liability doctrine, which holds one corporation liable for the liabilities of another corporation, applies in actions seeking the recovery of delinquent multiemployer pension fund contributions.  Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1327 (1990).  Successor liability is an exception to the general rule that a corporation that

purchases the assets of another does not assume liability for the seller's debts.  Id. at 1325.  Although the doctrine traditionally applied only when assets were sold, the doctrine has been extended to "encompass not only outright sales of a business but any reorganization that results in a substantial continuation of the business by the successor and either obliterates the previous business or leaves it as an 'empty shell.'"  Cent. States, Se. & Sw. Areas Pension Fund v. Wiseway Motor Freight, Inc., No. 99 C 4202, 2000 WL 1409825, at *6 (N.D. Ill. Sept. 26, 2000) (quoting (Chi. Dist. Council of Carpenters Pension Fund v. J.F. McCarthy, Inc., No. 94 C 6881, 1996 WL 563459, at *6 (N.D. Ill. Sept. 30, 1996)); see also Sullivan v. Running Waters Irrigation, Inc., 739 F.3d 354, 357 (7th Cir. 2014) (noting that the formal purchase of assets is not required to establish successor liability in the ERISA context).

In the ERISA context, successor liability may be imposed where (1) the successor had notice of its predecessor's liability and (2) there exist sufficient indicia of continuity between the two corporations.  Artistic Furniture, 920 F. 2d at 1329.  The relevant factors to consider when determining whether there is a sufficient continuity between the two corporations include, but are not limited

to: (1) the identity of the officers, directors, and shareholders of the two corporations; (2) whether the second corporation uses the same location, workforce, and supervisors; (3) whether the second corporation maintains the same jobs under substantially the same working conditions; (4)  whether the second corporation uses the same machinery, equipment, and methods of production; and (5) whether the second corporation fulfilled the work obligations or commitments of the previous entity.  See Reed v. Lawrence Chevrolet, Inc., 14 F. App'x 679, 687 (7th Cir. 2001) (unpublished disposition); Cent. Laborers' Pension Fund v. Demolition Excavating Group, Inc., No. 11-3327, 2014 WL 1308891, at *5 (C.D. Ill. April 1, 2014) (citing Artistic Furniture, 920 F.2d at 1329).  Another factor considered is whether the second corporation holds itself out as a continuation of the first corporation.  See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Hayes, 789 F. Supp. 1430, 1436 (N.D. Ill. 1992) (finding, among other factors related to continuity, that the new business held itself to the public as the old business).  In this case, the parties agree that Mid-West never held itself out as a continuation of AEH.

**A.   The Undisputed Facts Show that Mid-West Had Notice of AEH's Liability to Plaintiffs**

To succeed on the first prong of the successor liability test, Plaintiffs must show that Mid-West had notice of AEH's liability. The undisputed facts demonstrate that Mid-West had such notice.

Plaintiffs can show notice by actual notice or evidence from which knowledge may be implied.  Sullivan, 739 F.3d at 357. Notice can be implied from "[a] variety of circumstances, such as common control or proximity."  Sullivan, 739 F.3d at 357.

In this case, the undisputed evidence shows that Hensley knew of AEH's liability.  As president of Mid-West, Hensley's knowledge about AEH can be imputed to Mid-West as a matter of law.  See E.E.O.C. v. G-K-G, Inc., 39 F.3d 740, 748 (7th Cir. 1994) (finding that "notice to the president of a company is notice to the company as a matter of law").  Consequently, it is immaterial whether Richison is a figurehead or whether Richison knew of the liability.  Moreover, in Mid-West's response to AEH's Request to Admit, Mid-West admitted that, at the time of its inception, Mid-West, through Hensley, knew Plaintiffs had made a demand on AEH for the payment of certain liabilities, including delinquent fringe

benefit contributions.  <u>See</u> Def. Resp. to Request for Admission of Facts (d/e 56), ¶ 7.  Therefore, Mid-West had notice of AEH's liability.

## B.  Genuine Issues of Material Fact Preclude Finding Continuity or a Lack of Continuity as a Matter of Law

To succeed on the second prong, continuity, Plaintiffs must ultimately prove that there exist sufficient indicia of continuity between the two corporations.

Mid-West asserts that the undisputed facts show that Mid-West is not the successor of AEH because: (1) the corporations do not have similar assets; (2) Mid-West did not purchase any assets or equipment from AEH; (3) the corporations do not share a common place of business; (4) the corporations do not employ the same employees; (5) the scope of work performed by the two corporations is different; (6) Mid-West generates substantially less revenue than AEH; (7) Hensley's role with Mid-West is vastly different than his role with AEH; (8) Mid-West did not fulfill any work obligations of AEH and did not pay any obligations of AEH; and (9) Mid-West never held itself out as AEH.

Plaintiffs assert the undisputed facts show that Mid-West is the successor of AEH because: (1) the corporations have the same president and Richison is a figurehead owner of Mid-West; (2) many of AEH's employees also worked for Mid-West; (3) AEH and Mid-West performed the same type of work; (4) Mid-West used AEH's remaining equipment and vehicles; and (5) Mid-West fulfilled AEH's previous commitments and obligations, namely the Prairie Communications job and the payoff to F&M Bank.

As previously noted, the parties have filed cross-motions for summary judgment. When taking the facts in the light most favorable to the non-moving party, the Court is unable to conclude that the moving party is entitled to summary judgment. While the undisputed facts demonstrate that some of the factors favor one party or the other (the parties operate out of different locations, Hensley was the main operator of both corporations, Mid-West did not hold itself out as AEH), other factors do not. The continuity test requires a case-specific, fact-intensive inquiry. Central States, Se. & Sw. Areas Pension Fund v. TAS Inv. Co. LLC, No. 11-cv-2991, 2013 WL 1222042 (N.D. Ill. Mar. 25, 2013). And this Court must consider the totality of the circumstances when determining

whether a new corporation is the successor of the old corporation.
Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 43
(1987).  On the facts presented here, summary judgment is not
warranted for either party.

The parties dispute, among other things, whether the two
corporations performed the same type of work and used same
equipment.  For example, Mid-West asserts that AEH generated its
revenue from work much different than AEH: small concrete
projects versus heavy highway and bridge deck sealing.  Although
Plaintiffs submit the affidavit of Cory Storm indicated that the two
entities perform the same type of work, this fact is disputed.  See
Storm Aff. (d/e 48-5); Hensley Dep. at 14 (AEH's primary source of
revenue was heavy highway—road patches, bridge deck sealer,
scales at the scale house); Hensley Dep. at 41 (Mid-West's primary
source of revenue was miscellaneous construction—curb and
gutter, sidewalks, driveways, patios, garage floors).

The evidence presented about the equipment is also not clear.
AEH auctioned off a large number of assets in September 2012.
After F&M called the loans, AEH was left with three trucks, two
trailers, a mini excavator, and an air compressor.  AEH claims Mid-

West used all of that equipment.  Mid-West admits it used some of

AEH's assets during 2013 but also claims it rented equipment from

Peoples Rental.  Based on the evidence presented, it appears that

Mid-West ended up with the title to only one of the trucks on

the Schedule 1 and does not appear to own the other equipment

listed on Schedule 1.  Two other pieces of equipment that were

owned by AEH were transferred to Mid-West (a 1993 Chevy Kodiak

truck and a 1978 TriStar Trailer). Mid-West used seven

vehicles/trailers as collateral for a September 2014 loan and only

one appears to have been previously owned by Mid-West (the 1993

Kodiak truck).  Given this lack of clarity about the equipment, the

Court cannot determine on summary judgment the extent to which

this factor favors either party.

Some of the facts and inferences to be drawn from the facts

surrounding the Prairie Construction project also preclude

summary judgment to either party.  The job was completed before

Mid-West was formed and Hensley asserts that he and his son

performed the work in their individual capacity, suggesting that

AEH was no longer operating at that time.  However, Mid-West

created the invoice for the job and the majority of the funds were deposited in Mid-West's bank account.

Given this mixed evidence, the Court finds summary judgment for either party inappropriate.  See, e.g., Demolition Excavating Group, Inc., 2014 WL 1308891, at *8 (finding factual disputes as to whether there is a sufficient indicia of continuity between the two parties).  The factors favoring the moving party, when taken in the light most favorable to the non-moving party, are not so overwhelming as to warrant summary judgment.  See, e.g., TAS Inv. Co. LLC, 2013 WL 1222042, at *9 (refusing to award summary judgment to either party "on the fact intensive issue of successor liability because there are several disputes as to the key facts that the Court must consider as part of its totality of the circumstances analysis").

## IV. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Summary Judgment (d/e 45) and Defendant Mid-West's Motion for Summary Judgment (d/e 44) are DENIED.  This case is set for a Final Pretrial Conference on December 7, 2015 at 3:00 p.m.  The parties are reminded to comply with Local Rule 16.1, including Rule 16.1(E)(7)

(requiring the parties submit an agreed set of findings of fact and conclusions of law) and Rule 16.1(F) (prepare the proposed final pretrial order).  The proposed final pretrial order shall be filed by noon on December 3, 2015.  A date for the bench trial shall be scheduled at the Final Pretrial Conference.

ENTERED: October 29, 2015

FOR THE COURT:

<u>          s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE