IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTRAL LABORERS' PENSION FUND, CENTRAL )
LABORERS' SUPPLEMENTAL PENSION FUND,     )
CENTRAL LABORERS' WELFARE FUND, CENTRAL  )
LABORERS' RETIREE WELFARE FUND, CENTRAL  )
LABORERS' ANNUITY FUND, CENTRAL          )
LABORERS' ANNUITY PREMIUM FUND, ILLINOIS )
LABORERS' AND CONTRACTORS' JOINT         )
APPRENTICESHIP & TRAINING PROGRAM,       )
NORTH CENTRAL ILLINOIS LABORERS'         )
HEALTH & WELFARE FUND, CENTRAL ILLINOIS  )
LABORERS'-EMPLOYERS' COOPERATIVE         )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS  )
LABORERS'-EMPLOYERS' COOPERATIVE         )
EDUCATION TRUST, NORTH CENTRAL ILLINOIS  )
MIDWEST REGIONAL ORGANIZING COMMITTEE,   )
NORTH CENTRAL ILLINOIS MARKET            )
PRESERVATION FUND, LABORERS' OF ILLINOIS )
VACATION FUND, SOUTHERN AND CENTRAL      )
VACATION FUND, CENTRAL ILLINOIS LEGAL    )
SERVICES FUND, SUBSTANCE ABUSE TESTING   )
FUND, LABORERS' LOCAL 362, and LABORERS' )
LOCAL 538,                               )
                                         )
    Plaintiffs,                          )
                                         )
v.                                       ) No. 14-3052
                                         )
AEH CONSTRUCTION, INC., and MID-WEST     )
ILLINOIS CONCRETE CONSTRUCTION, INC.,    )
                                         )
    Defendants.                          )

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court to determine the appropriate remedy for the fraudulent transfers AEH Construction, Inc. (AEH) made to Thomas Hensley. See Pls. Brief (d/e 57); Hensley's Brief (d/e 59). For the reasons that follow, the Court ORDERS Thomas Hensley to deliver and turn over $22,200 to Plaintiffs. Plaintiffs may also levy execution on the assets transferred or their proceeds.

## I. BACKGROUND

The facts of this case are more fully set forth in this Court's previous opinions. See Central Laborers' Pension Fund v. AEH Constr., Inc., No. 14-3052, 2015 WL 5996385 (C.D. Ill. Oct. 14, 2015); Central Laborers' Pension Fund v. AEH Constr., Inc., No. 14-3052, 2015 WL 5462139 (C.D. Ill. Sept. 17, 2015). In sum, Plaintiffs obtained a default judgment against AEH in the total amount of $25,391.66 consisting of audit liabilities, delinquent contributions, report form shortages, liquidated damages, audit costs, reasonable attorney's fees, and costs. See Order of Default Judgment (d/e 22). Following a Citation to Discover Assets

hearing, Plaintiffs filed a Motion and Memorandum to Avoid Fraudulent Transfers Pursuant to 740 ILCS 160/6(b) (d/e 38).

Section 160/6(b) of the Illinois Uniform Fraudulent Transfer Act provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

740 ILCS 160/6(b).  This provision is sometimes referred to as an insider preference claim.  Arachnid, Inc. v. Valley Recreation Prods. Inc., No. 98 C 50282, 2001 WL 1664052, at *6 (N.D. Ill. Dec. 27, 2001).

Plaintiffs alleged that AEH made fraudulent transfers to Thomas Hensley, who was the president, director, and sole shareholder of AEH, in the amount of $22,200.  Mr. Hensley asserted that the transfers were past due payments on loans Mr. Hensley made to AEH.

On October 14, 2015, following a hearing, this Court found that the transfers from AEH to Mr. Hensley were fraudulent. AEH Constr., 2015 WL 5996385, at *3 (finding, after a hearing, that Mr.

Hensley did not rebut the presumption that the transfers were fraudulent); see also AEH Constr., 2015 WL 5462139, at *4 (finding Plaintiffs made a sufficient showing that the transfers were fraudulent and setting the matter for an evidentiary hearing). The Court found that Plaintiffs' claim arose before the transfers were made; the transfers were made to an insider, Mr. Hensley, for an antecedent debt; AEH was insolvent at the time of the transfers; and the insider, Mr. Hensley, had reasonable cause to believe that AEH was insolvent. Id. The Court directed the parties to submit supplemental briefing on the appropriate remedy for the fraudulent transfers. Central Laborers', 2015 WL 5996385 at *3. The parties have filed supplemental briefs.

## II. ANALYSIS

Plaintiffs argue that, because the Court found that the transfers from AEH to Mr. Hensley were fraudulent and Mr. Hensley failed to assert a proper defense or claim, Plaintiffs are entitled to the full $22,200. Plaintiffs ask that the Court order Mr. Hensley to deliver and turn over $22,200 to Plaintiffs.

Mr. Hensley argues Plaintiffs should not receive the entire $22,200 and that he should receive an adjustment based upon the

amounts owed on the loans he made to AEH. Mr. Hensley argues that the funds transferred were restitution payments made to AEH by an employee who had stolen money from AEH and that AEH's decision to transfer the restitution payments to Mr. Hensley was a good-faith decision based upon the advice of AEH's legal counsel. As such, according to Mr. Hensley, equity demands that he receive a benefit from the restitution payments.

Mr. Hensley notes that the unpaid principle and interest on the loans he made to AEH total $312,291. AEH owes Plaintiffs $25,391.66. Plaintiffs and Mr. Hensley are purportedly the only creditors of AEH. Therefore, AEH's debt to Mr. Hensley represents 92.48% of AEH's total debt ($312,291 plus $25,391.66 equals a total debt of $337,682.66). Mr. Hensley requests 92.48% of the $22,200 ($20,530.56). This would entitle Plaintiffs to $1,669.44.

Alternatively, Mr. Hensley requests an adjustment based only on the unpaid principle which AEH owes Mr. Hensley. The unpaid principle on his loans to AEH totaled $251,299.17. The unpaid principle on the loans Mr. Hensley made to AEH represents 90.82% of AEH's total debt ($251,299.17 plus $25,391.66 equals a total debt of $276,690.83). Consequently, Mr. Hensley believes he

should, in the alternative, receive 90.82% of the $22,200 ($20,162.04). This would entitle Plaintiffs to $2,037.96.

The appropriate relief for a fraudulent transfer claim is set forth in Section 160/8 of the Fraudulent Transfer Act, which provides in relevant part as follows:

> (a)  In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9, may obtain:
>
>> (1)   avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> * * *
>
> (b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

740 ILCS 160/8. Section 160/9 provides defenses to a fraudulent transfer claim and also provides for adjustment of a judgment that is based on the value of the asset transferred:

> (b) Except as otherwise provided in this Section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of Section 8, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against:

> (1) the first transferee of the asset or the person for whose benefit the transfer was made; or
>
> (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.
>
> (c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, <u>subject to adjustment as the equities may require.</u>

740 ILCS 160/9(b), (c) (emphasis added). Under these two provisions of the Fraudulent Transfer Act, once transfers have been deemed fraudulent, the creditor may "recover the property transferred or obtain a money judgment for the value of the assets transferred, less certain adjustments for the amounts paid by the transferee [citation omitted]." <u>In re Eckert</u>, 388 B.R. 813, 842 (Bankr. N.D. Ill. 2008) (involving, in part, the sale of property for less than its fair market value), <u>aff'd</u>, <u>Grochocinski v. Schlossberg</u>, 402 B.R. 825 (N.D. Ill. 2009).

    Neither the parties nor this Court have identified an Illinois court case addressing both an insider preference claim under Section 160/6(b) and whether the insider is entitled to an adjustment for any value previously given by the insider to the

debtor. Because the Uniform Fraudulent Transfer Act is a uniform act, however, this Court may consider cases interpreting other states' versions of the Uniform Fraudulent Transfer Act. Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 947 (7th Cir. 2007). Moreover, Illinois' Uniform Fraudulent Transfer Act specifically provides that:

> This Act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.

740 ILCS 160/12.

This Court finds persuasive Prairie Lakes Health Care Sys., Inc. v. Wookey, 583 N.W.2d 405 (S.D. 1998) and the Uniform Fraudulent Transfer Act Prefatory Note on which it relies.[1] In Wookey, the court found that the debtors' transfer of their farm to their son constituted a fraudulent transfer under South Dakota's preferential transfer statute, SDCL 54-8A-5(b) ("5(b)"), which is identical to 740 ILCS 160/6(b). The court recognized that debtors are generally allowed to prefer one creditor over another. Id. at 413. However, the court found that the state's preferential transfer

---

[1] Neither Illinois nor South Dakota adopted the Uniform Fraudulent Transfer Act Prefatory Note (1984).

statute, ¶ 5(b), "curtails this privilege if the debtor is insolvent at the time and the preference is to an insider." Id., The Wookey court found that:

> The rationale behind ¶ 5(b) "is that an insolvent debtor is obligated to pay debts to creditors not related to [the debtor] before paying those who are insiders." UFTA, Prefatory Note. This provision attempts to diminish the unfair advantage insiders sometimes possess when they are familiar with the debtor's financial substance. Unlike its bankruptcy counterpart, however, ¶ 5(b) permits avoidance not for the benefit of all unsecured creditors, but only for the benefit of a plaintiff creditor.

Wookey, 583 N.W.2d at 413; see also Farstveet v. Rudolph ex rel. Eileen Rudolph Estate, 630 N.W.2d 24, 31 (N.D. 2000) (citing Wookey and finding that the drafters of the Uniform Fraudulent Transfer Act intended that the preferential transfer provision diminish "the sometimes unfair advantages insiders possess when they are familiar with the debtor's financial status").

Although Wookey did not address the appropriate remedy for an insider preference claim, that court's interpretation of the insider preference provision provides a persuasive answer to the question presented in this case. As noted in Wookey, the insider preference provision prevents an insolvent debtor from paying insider creditors ahead of other creditors. To allow the insider to receive a benefit

from the preferential transfer in the form of a pro rata share of the transfer would defeat the purpose of the statute.  See, e.g., Wookey, 583 N.W.2d at 413, n.5  (noting that the avoidance of the transfer is for the benefit of the plaintiff creditor, not all creditors, and recognizing that this "shifts the benefit of the preference from the insider creditor to the plaintiff creditor"); see also, e.g., N.L.R.B. v. Int'l Measurement & Control Co., Inc., 978 F.2d 334, 338 (7th Cir. 1992) (noting in dicta that a debtor's payment of past due wages to insiders when the debtor was insolvent and the insiders knew the debtor was insolvent "fit . . . . like a glove" Section 6(b) of the Uniform Fraudulent Transfer Act, for which the remedy would be to require the preferred creditors to "refund the money to the debtor"). In light of the purpose of the insider preference provision, the Court finds that the equities do not warrant an adjustment to account for the loans Mr. Hensley previously made to AEH.  See, e.g., 740 ILCS 160/9(c) (providing that where a judgment is based on the value of the asset transferred, "the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require").  AEH was not entitled to favor insider Mr. Hensley's antecedent debt over Plaintiffs' pre-

transfer claim when AEH was insolvent and Mr. Hensley had reasonable cause to believe AEH was insolvent. Therefore, Plaintiffs are entitled to the entire $22,200.

Mr. Hensley cites Eckert, 388 B.R. 813, aff'd by Grochocinski, 402 B.R. 825, in support of his argument that he is entitled to an adjustment. Mr. Hensley points out that the bankruptcy court imposed damages based on the difference between the fair market value of the fraudulently transferred property and the amount the transferee paid to the debtor for the transferred property.

However, Grochocinski did not involve Section 160/6(b), a preferential payment to an insider creditor on an antecedent debt. For the reasons cited above, the Court finds that equity does not warrant any adjustments to Mr. Hensley for the prior loans he made to AEH.

### III. CONCLUSION

For the reasons stated herein, Thomas Hensley is ORDERED to deliver and turn over $22,200 to Plaintiffs.  In addition, because judgment has been entered against AEH and in favor of Plaintiffs

(d/e 58), Plaintiffs may levy execution on the assets transferred or their proceeds. 740 ILCS 160/8(b).

ENTERED: November 16, 2015

FOR THE COURT:

s/Sue E. Myerscough<br>
SUE E. MYERSCOUGH<br>
UNITED STATES DISTRICT JUDGE